**CHESAPEAKE AND POTOMAC TELEPHONE COMPANY,
Petitioner,**

v.

**PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA,
Respondent,**

**People's Counsel of the District of Columbia, Intervenor.**

No. 84–203.

District of Columbia Court of Appeals.
Argued Sept. 12, 1984.
Decided Sept. 27, 1985.

D. Michael Stroud, Washington, D.C., with whom Lee A. Satterfield and Mark J. Mathis, Washington, D.C., were on the brief, for petitioner.

Roberta Willis Sims, Washington, D.C., for respondent.

James R. Choukas-Bradley, Washington, D.C., with whom Frederick D. Dorsey, Elizabeth A. Noel, and Stanley W. Balis, Washington, D.C., were on the brief, for intervenor.

Before BELSON and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

TERRY, Associate Judge:

Chesapeake and Potomac Telephone Company (C & P) appeals from an order entered by the Public Service Commission in one of two separate ratemaking proceedings. At issue is the portion of the Commission's order which allocates between C & P and its ratepayers the cost of a double tax payment made by C & P pursuant to an amendment to the District of Columbia franchise tax act. The Commission allowed the payment to be recovered in its entirety by C & P from its ratepayers over a three-year period through a surcharge on C & P's rates, but it denied C & P any recovery of interest on the payment. We find the Commission's decision to be just and reasonable, and therefore we affirm it.

I

On March 15, 1983, C & P filed an application with the Commission, initiating Formal Case No. 798, for permanent changes in its rates. Some time thereafter the District of Columbia Council enacted a new tax on utilities, to take effect on July 1, 1983.[1] On June 15, anticipating that the law would have its impact long before any relief could be granted for it in the general rate case, C & P filed an application for a separate ratemaking proceeding, which became Formal Case No. 806, to deal solely and quickly with the effect of the new law. After a public hearing on the impact of the new tax on C & P, the Commission issued its Order No. 7891 on September 29, 1983. The order allowed C & P to impose surcharges which would enable it to recover immedi-

---

1. D.C. Law 5–14, § 102, 30 D.C. Reg. 2632 (1983), amending D.C. Code § 47–2501 (1981). The statute as amended appears at D.C. Code § 47–2501 (1985 Supp.).

ately the added cost of complying with the new tax law, and also to recoup, over a period of three years without interest, the final tax payment it made under the prior law.[2] C & P filed an application for reconsideration, contending that it should be allowed to recover from the ratepayers a sum equivalent to interest on its tax payment over the three-year period. On December 30, 1983, the Commission issued Order No. 7952 denying C & P's request. From that denial C & P appeals.

## II

■ Our review of a ratemaking order by the Commission "is the narrowest judicial review in the field of administrative law." *Potomac Electric Power Co. v. Public Service Commission,* 402 A.2d 14, 17 (D.C.) (en banc) (citations omitted), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979); *accord, e.g., People's Counsel v. Public Service Commission,* 472 A.2d 860, 862 n.3 (D.C.1984). The responsibility for setting utility rates lies with the Commission, not with this court. D.C. Code §§ 43–501, 43–601, 43–611 (1981); *D.C. Telephone Answering Service Committee v. Public Service Commission,* 476 A.2d 1113, 1118 (D.C. 1984); *People's Counsel v. Public Service Commission, supra,* 472 A.2d at 862; *Washington Public Interest Organization v. Public Service Commission,* 393 A.2d 71, 75 (D.C. 1978), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). To meet that responsibility, the Commission must "ar-

riv[e] at a fair balance between competing consumer and investor interests." *People's Counsel v. Public Service Commission,* 399 A.2d 43, 45 (D.C.1979); *see FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 603, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1944). In the Commission's performance of its task, "[i]t is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry ... is at an end." *Id.* at 602, 64 S.Ct. at 288, quoted in *People's Counsel v. Public Service Commission, supra,* 472 A.2d at 862.

■ Any rate order of the Commission, as "the product of expert judgment," is presumptively valid and will be reversed only upon a "convincing showing" that the Commission has failed to comply with the statutory criteria. *FPC v. Hope Natural Gas Co., supra,* 320 U.S. at 602, 64 S.Ct. at 287; *see D.C. Telephone Answering Service Committee v. Public Service Commission, supra,* 476 A.2d at 1119; *People's Counsel v. Public Service Commission, supra,* 472 A.2d at 863; *General Services Administration v. Public Service Commission,* 469 A.2d 1238, 1241 (D.C. 1983). So long as the Commission's order is within a "zone of reasonableness,"[3] it is insulated from judicial review, provided that the Commission has carried its "burden of showing fully and clearly why it has taken the particular ratemaking action." *Washington Public Interest Organization v.*

---

2. Like its predecessor, the new franchise tax law requires the prepayment of a tax on gross receipts of the succeeding year based on the receipts generated in the current year. It amended D.C. Code § 47–2501 by increasing the gross receipts tax on utility revenues from 6 percent to 6.7 percent. It also altered the payment schedule, causing some overlap between payments under the old law and the new law. Consequently, utilities were required to make, within a period of a little more than a year, their final 6 percent payment under the old law as well as the 6.7 percent payment required by the amended law. It is the 6 percent payment for which C & P seeks interest.

3. *FPC v. Natural Gas Pipeline Co.,* 315 U.S. 575, 585, 62 S.Ct. 736, 742, 86 L.Ed. 1037 (1942). "From the investor standpoint, courts have defined the lower boundary of this zone of reasonableness as 'one which is not confiscatory in the constitutional sense.' ... From the consumer standpoint, the upper boundary cannot be so high that the rate would be classified as 'exorbitant.'" *Metropolitan Washington Board of Trade v. Public Service Commission,* 432 A.2d 343, 350 (D.C.1981) (citations omitted).

Rate orders issued by the Commission must be "reasonable, just and nondiscriminatory." D.C. Code § 43–501 (1981). Therefore, if an order falls within the "zone of reasonableness," it must be upheld.

*Public Service Commission, supra,* 393 A.2d at 75; *accord, e.g., D.C. Telephone Answering Service Committee v. Public Service Commission, supra,* 476 A.2d at 1119; *People's Counsel v. Public Service Commission, supra,* 472 A.2d at 863.

■■■■ C & P's principal contention is that the Commission is required by law to grant rate-base treatment for the unamortized interest on the tax payment made under the prior law.[4] C & P relies on certain language in our decision in *People's Counsel v. Public Service Commission, supra,* 399 A.2d at 46:

> Utilities often experience cash flow problems because they bill for service after it is rendered. ... Included, therefore, in the rate base is an allowance for working capital so that the company can keep itself current in paying costs. Cash-working capital represents an amount which the company (investors) must supply from its *own funds* for the purpose of enabling it to meet current obligations as they arise due to the time lag between payment of expenses and collection of revenues.... If investors supply the funds for working capital, they are entitled to a return on these advances and this is accomplished by including the working capital requirement in the rate base. [Emphasis in original; citations omitted.]

Because gross receipts taxes are prepaid by utilities, the Commission may properly grant a working capital allowance for them. *Washington Gas Light Co. v. Public Service Commission,* 452 A.2d 375, 381 (D.C.1982), *cert. denied,* 462 U.S. 1107, 103 S.Ct. 2454, 77 L.Ed.2d 1334 (1983). But that does not mean that the Commission *must* grant such an allowance. C & P maintains that since its investors supplied the funds which enabled it to pay its taxes, the amount advanced by the investors should have been included as part of "the working capital requirement in the rate base." It is beyond dispute, however, that "[a]n allowance by the Commission for cash-working capital is not guaranteed as a matter of course. The utility carries the burden of establishing the need for cash-working capital." *People's Counsel v. Public Service Commission, supra,* 399 A.2d at 47 (citation omitted). In this case C & P failed to carry that burden. It offered no evidence before the Commission of its "need for cash-working capital," and it has not shown that even with the relief granted by the Commission, it has been or will be unable to meet its current obligations as they come due.

■■■■ Moreover, quite apart from C & P's failure to establish its "need for cash-working capital," it has also failed to carry its heavy burden of demonstrating that the overall impact of the Commission's order is confiscatory. It is not enough for C & P to complain that no return of capital, in the form of interest, was provided in the surcharge. Since the object of any ratemaking proceeding is to achieve "a fair balance

---

4. People's Counsel argues that this court must uphold the Commission's order regardless of the amount of relief granted because the Commission had no duty to grant C & P any relief in a surcharge proceeding separate from the general rate case. This contention misses the mark. If, for example, the new tax law had rendered C & P's existing rates unreasonable, the Commission would have had to provide some form of relief outside of the general rate case if necessary to prevent the compromise of C & P's financial integrity. The function of the Commission is to ensure the maintenance of reasonable rates. D.C. Code § 43–402 (1981). Toward this end, the Code bestows upon it "all additional, implied, and incidental power which may be proper and necessary to effect and carry out, perform, and execute" all of its express powers. D.C. Code § 43–103 (1981). This sweeping grant of "additional, implied, and incidental power" is sufficient to sustain the Commission's grant of partial relief to C & P, provided of course that it is within the zone of reasonableness. *Cf. People's Counsel v. Public Service Commission, supra,* 472 A.2d at 865 (section 43–103 authorizes the Commission to approve a fuel adjustment clause).

between competing consumer and investor interests,"[5] C & P must show that the "actual rate of return earned by [it] is so low as to deprive [it] of the opportunity to maintain its financial integrity, to attract necessary capital and to compensate investors fairly." *Potomac Electric Power Co. v. Public Service Commission*, 457 A.2d 776, 788 (D.C.1983); *accord, FPC v. Hope Natural Gas Co., supra*, 320 U.S. at 603, 64 S.Ct. at 288. In other words, it is only the big picture that counts. Because C & P has not shown that the Commission's order was outside the zone of reasonableness or jeopardized its financial integrity, we must affirm that order, provided of course that it is adequately explained.

▮▮▮▮▮ Although we will not set aside a rate order unless the party challenging it makes a "convincing showing" that it is unreasonable, unjust, or discriminatory, at the same time we cannot approve a rate order unless the Commission has fully and clearly explained why it has entered the particular order under review. *People's Counsel v. Public Service Commission, supra*, 472 A.2d at 862–863; *Washington Public Interest Organization v. Public Service Commission, supra*, 393 A.2d at 75–79. The nature of the explanation, however, will vary from case to case. In rate proceedings separate from a general rate case, in which the scope is narrow, quick action is essential, and the record is necessarily less comprehensive, the Commission is "not required to make the full and complete findings ... that must accompany an exercise of its authority to prescribe permanent rates." *Payne v. Washington Metropolitan Area Transit Commission*, 134 U.S.App.D.C. 321, 327, 415 F.2d 901, 907 (1968); *see Potomac Electric Power Co. v. Public Service Commission, supra*,

457 A.2d at 784; *cf. Potomac Electric Power Co. v. Public Service Commission*, 455 A.2d 374, 379 n.8 (D.C.1982). Moreover, it is entirely proper for the Commission in such cases to rely on findings made in the separate general rate case. *See Potomac Electric Power Co. v. Public Service Commission, supra*, 457 A.2d at 781 n.4; *cf. D.C. Telephone Answering Service Committee v. Public Service Commission, supra*, 476 A.2d at 1125 (the Commission's explanation of its decision was sufficient "when read in conjunction with previous telephone rate orders").

▮▮▮▮ In this case the Commission noted that the "double-up" in tax payments was an "extraordinary event" for which "neither C & P nor its ratepayers bear the blame." Order No. 7952 at 24. It found that the impact on C & P of its order allocating the cost of the tax between C & P and its customers was not as significant as it might seem to be at first blush.[6] The Commission concluded that the effect of its order was to lessen "the immediate impact on the ratepayers, while at the same time allowing the Company to recoup its prepayment in a timely manner." Order No. 7891 at 5 n.6. In other words, the order was designed to meet the Commission's responsibility of achieving "a fair balance between competing consumer and investor interests." *People's Counsel v. Public Service Commission, supra*, 399 A.2d at 45. We are satisfied that the Commission's explanation of the reasons behind its order is sufficient to meet the demands of the case law, which exist, after all, simply to ensure an adequate basis for judicial review. *See Permian Basin Area Rate Cases*, 390 U.S. 747, 792, 88 S.Ct. 1344, 1373, 20 L.Ed.2d 312 (1968); *Washington Public Interest*

---

5. *People's Counsel v. Public Service Commission, supra*, 399 A.2d at 45.

6. In its order denying reconsideration, the Commission stated:

It must be noted that the impact of the Commission's decision is not as great on C & P as it is on WGL and PEPCO in that with respect

to telephone terminal equipment the amortization period is 1 year. This shorter amortization period was allowed because approximately 40% of C & P's local revenues will be divested as of January 1, 1984, and that mainly relates to telephone terminal equipment. Order No. 7952 at 25 n. 16.

*Organization v. Public Service Commission, supra,* 393 A.2d at 75–79.

*Affirmed.*